

FILED

Oct 11 2019, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian A. Karle
Ball Eggleston, PC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Octavius D. Alexander,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | October 11, 2019<br><br>Court of Appeals Case No.<br>19A-CR-244<br><br>Appeal from the Tippecanoe<br>Circuit Court<br><br>The Honorable Sean Persin, Judge<br><br>Trial Court Cause No.<br>79C01-1707-F5-80 |

**May, Judge.**

[1] Octavius D. Alexander appeals his conviction of Level 5 felony operating a vehicle with an alcohol concentration equivalent of 0.08 or more and with a previous conviction for operating while intoxicated causing serious bodily

injury.[1]  He raises two issues on appeal, which we restate as whether the traffic stop of Alexander violated either the Fourth Amendment of the United States Constitution or Article I, Section 11 of the Indiana Constitution.  We affirm.[2]

## Facts and Procedural History

[2] On May 19, 2017, at 2:00 a.m., Officer Grant Leroux was on patrol in Lafayette, Indiana.  Officer Leroux began following Alexander's vehicle in the normal course of traffic near the intersection of Earl Avenue and Kossuth Street.  Officer Leroux followed Alexander for about a mile before observing Alexander's vehicle come to a complete stop at the intersection of Kossuth Street and Main Street.  After stopping, Alexander signaled a right turn and turned once the stoplight turned green.  Officer Leroux then initiated a traffic stop because Alexander did not signal his turn far enough in advance of the intersection.

[3] While speaking with Alexander, Officer Leroux smelled alcohol on his breath and called Officer Matthew Meeks for assistance.  When Officer Meeks arrived, he took over investigating whether Alexander was operating while intoxicated. While Officer Meeks was investigating, Officer Leroux conducted a canine sniff of the vehicle, and the canine did not detect the presence of any narcotics.

---

[1] Ind. Code § 9-30-5-1; Ind. Code § 9-30-5-3(b)(2).

[2] Alexander requested oral argument, which we denied by separate order on August 21, 2019.

[4] Officer Meeks asked Alexander if he had been drinking, and Alexander admitted having a few drinks. Alexander's speech was slurred, his eyes were bloodshot, and his breath smelled of alcohol. Officer Meeks administered three field sobriety tests. Alexander failed the horizontal gaze nystagmus test and the one-legged stand test but passed the walk and turn test. Alexander consented to a chemical test, and Officer Meeks transported him to a hospital where a nurse drew his blood. The blood draw revealed Alexander's blood alcohol concentration to be 0.15.

[5] The State charged Alexander with Level 5 felony operating while intoxicated because he had a previous conviction for operating while intoxicated causing serious bodily injury in 2007.[3] The State also charged him with operating a vehicle with an alcohol concentration equivalent to .15 or more as a Class A misdemeanor,[4] operating a vehicle while intoxicated as a Class C misdemeanor,[5] operating a vehicle with a schedule I or II controlled substance

---

[3] The abstract lists the offense as "9-30-5-1(b)/F5: Operating a Vehicle with an ACE of .15 or More where def. has a prior conviction fo [sic]" (App. Vol. II at 65.) Also, the bench trial order lists the requisite alcohol concentration equivalent as .15. (*Id.* at 55.) However, the listing of the requisite alcohol concentration equivalent appears to be a scrivener's error. The requisite alcohol concentration equivalent for operating a vehicle with a prior conviction for operating while intoxicated causing serious bodily injury is .08, not .15. Ind. Code § 9-30-5-1; Ind. Code § 9-30-5-3(b)(2). When a case is tried to the bench, we assume the trial court knows and properly applies the law to the relevant facts of the case. *Parks v. State*, 113 N.E.3d 269, 274 (Ind. Ct. App. 2018). The trial court found Alexander's alcohol concentration was above .08.

[4] Ind. Code § 9-30-5-1.

[5] Ind. Code § 9-30-5-2.

in one's body as a Class C misdemeanor,[6] and Level 5 felony operating a vehicle with a schedule I or II controlled substance in one's body.[7]

[6] On April 19, 2018, Alexander filed a motion to suppress all observations made by the arresting officers, the statements made by Alexander after the stop, and Alexander's blood alcohol content. In support, Alexander alleged Officer Leroux did not have reasonable suspicion of a crime to initiate the traffic stop and the stop was unreasonable. The trial court held a hearing on June 5, 2018, and denied Alexander's motion.

[7] The court held a bench trial on November 27, 2018, and convicted Alexander of operating a vehicle with an alcohol concentration equivalent of 0.08 or more when the defendant has a prior conviction of operating while intoxicated causing serious bodily injury.[8] Alexander raised a continuing objection at trial based on the arguments presented in his motion to suppress. On January 11, 2019, the court imposed a four-year sentence, with one year executed in the Indiana Department of Correction, two years to be served on community corrections, and one year suspended to probation.

---

[6] Ind. Code § 9-30-5-1.

[7] Ind. Code § 9-30-5-1; Ind. Code § 9-30-5-3(b)(2).

[8] With regard to the remaining counts, the trial court either entered a verdict of not guilty or merged the count with the count of conviction due to double jeopardy concerns.

# Discussion and Decision

[8] Although Alexander filed a motion to suppress the evidence obtained during the traffic stop, his case proceeded to trial and he renewed his objection at trial. Thus, his appeal stems from the admission at trial of the evidence obtained during the traffic stop. *See Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). The trial court has broad discretion in ruling on the admission of evidence, and we review for an abuse of discretion. *Id*. "We will reverse a trial court's decision to admit evidence only if the decision was clearly against the logic and effect of the facts and circumstances and the error affects the defendant's substantial rights." *Wright v. State*, 108 N.E.3d 307, 313 (Ind. 2018) (internal quotation marks omitted). Nevertheless, "the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo." *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014).

## Fourth Amendment

[9] The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A traffic stop is a seizure that must comply with the Fourth Amendment. *McLain v. State*, 963 N.E.2d 662, 666 (Ind. Ct. App. 2012), *trans. denied*. Nevertheless, it is "well settled that police officers may stop a vehicle when they observe minor traffic violations." *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010).

[10] At issue in this case violation of a traffic control statute that provides: "A signal of intention to turn right or left shall be given continuously during not less than

the last two hundred (200) feet traveled by a vehicle before turning or changing lanes." Ind. Code § 9-21-8-25. Alexander does not dispute that he failed to signal his intent to turn until after he stopped at the intersection of Kossuth Street and Main Street. Accordingly, Alexander did not signal his turn at least 200 feet in advance of that turn as required by Section 9-21-8-25, which prompted Officer Leroux to initiate the traffic stop.

[11] Despite his failure to properly signal, Alexander argues the stop was unconstitutional because the State failed to show his compliance with the statute was even possible. Alexander's argument relies on *Rhodes v. State*, 950 N.E.2d 1261 (Ind. Ct. App. 2011). In *Rhodes,* a tow truck driver notified police that Rhodes, who was driving a vehicle, might be intoxicated. *Id*. at 1263. The officer followed Rhodes, observed Rhodes fail to use his turn signal, and pulled him over. *Id*. at 1264. Rhodes moved to suppress the evidence gathered during the traffic stop, and the trial court granted the motion. *Id*. The trial court observed that there might have been an intervening street between where Rhodes was to begin signaling and where Rhodes intended to turn, which could potentially confuse other drivers. *Id*. The trial court also highlighted Rhodes' testimony that he executed the turn after the officer activated the emergency lights. *Id*. We reviewed the trial court's decision to ensure it was supported by substantial evidence of probative value, and we drew all reasonable inferences in favor of the trial court's decision. *Id*. at 1264-65. We observed that the officer testified Rhodes had his turn signal on for about 150 feet prior to initiating his turn and the record did not reflect whether there had been at least

200 feet between where Rhodes began traveling on the street and where he initiated his turn. *Id.* at 1265. We affirmed the trial court's grant of the motion to suppress and explained:

> [T]he State failed to show that compliance with the statute was possible under the circumstances. In addition, if the trial court credited Rhodes's testimony, once the officer turned on his emergency lights, Rhodes was required to pull over immediately. . .Thus, we cannot say that the trial court erred by concluding that Rhodes was not properly stopped for a traffic violation.

*Id.*

[12] In contrast, the State contends Officer Leroux's stop of Alexander was reasonable pursuant to *Peak v. State*, 26 N.E.3d 1010 (Ind. Ct. App. 2015). Peak drove away from a house that was suspected of being used for drug activity, and an officer followed him. *Id.* at 1012. Peak stopped at a red light, activated his right turn signal, then turned right. *Id.* The officer pulled Peak over because he did not signal his turn sufficiently in advance. *Id.* The officer searched Peak and found marijuana on his person. *Id.* at 1013. Peak did not contest his failure to signal 200 feet before turning right. *Id.* at 1015. We observed that "[f]ailure to signal within the required distance is objective evidence of failure to comply with the statue." *Id.* Consequently, Peak's failure to signal his turn gave the officer reasonable suspicion to initiate the traffic stop. *Id.* at 1016.

[13] Given the facts and procedural posture of this case, we find *Peak* more analogous. In *Rhodes*, there were evidentiary disputes about whether the officer

activated his lights before Rhodes signaled his turn, whether the officer could have pulled Rhodes over for failing to signal his turn sufficiently in advance, and whether Rhodes had entered the roadway more than 200 feet in advance of his turn. Here, as in *Peak*, there is no evidentiary dispute about whether Alexander failed to signal his turn sufficiently in advance,[9] and thus the issue before us is a matter of law that we review de novo. As a matter of law, Officer Leroux was justified in initiating a traffic stop. *See Love v. State*, 741 N.E.2d 789, 791 (Ind. Ct. App. 2001) (holding officer was clearly justified in stopping vehicle to investigate traffic infraction).

## Article I, Section 11 of Indiana Constitution

[14]    Article 1, Section 11 of the Indiana Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

We evaluate the reasonableness of a stop and seizure under the Indiana Constitution by looking at the totality of the circumstances and balancing: "1)

---

[9] We also observe that the intersection of Earl Avenue and Kossuth Street is several blocks away from the intersection of Kossuth Street and Main Street. Google Maps, *S. Earl Ave, Lafayette, IN*, https://www.google.com/maps/place/S+Earl+Ave,+Lafayette,+IN (last visited September 12, 2019). Therefore, it was possible for Alexander to have initiated his turn signal at a distance greater than 200 feet in advance of his turn.

the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[15] Alexander contends the degree of concern and suspicion was minimal because no evidence suggested Alexander was driving under the influence prior to Officer Leroux initiating the traffic stop. Yet, Officer Leroux did observe Alexander commit a traffic violation and, thus, was aware of an illegal act when he stopped the vehicle. Alexander argues the stop was unnecessarily intrusive because it included a canine sniff, but he does not point to any evidence in the record to demonstrate the canine sniff prolonged the stop, impeded his freedom of movement, or involved entering the vehicle. *See State v. Gibson*, 886 N.E.2d 639, 643 (Ind. Ct. App. 2008) (holding canine sniff of the exterior of defendant's vehicle did not violate either the Fourth Amendment or the Indiana Constitution). Lastly, Alexander argues the extent of law enforcement need in this case was minimal because there were no other cars or pedestrians around at the time, he signaled his turn for several seconds while stopped before turning, and there was no indication Alexander was driving under the influence before he was stopped.

[16] However, the enforceability of our traffic laws is not dependent upon such situation-specific factors. Police officers simply have authority to initiate traffic stops in order to enforce the traffic laws or to investigate a reasonable suspicion that a driver might be under the influence. Because the *Litchfield* factors weigh

in favor of the State, Officer Leroux's stop of Alexander did not violate Article 1, Section 11 of the Indiana Constitution. *See Johnson v. State*, 992 N.E.2d 955, 960 (Ind. Ct. App. 2013) (holding traffic stop of individual for suspected window tint violation and subsequent discovery of marijuana did not violate either the United States Constitution or the Indiana Constitution), *trans. denied*.

# Conclusion

[17]     Alexander failed to properly signal before turning. Therefore, law enforcement had reason to initiate a traffic stop, and the ensuing investigation of Alexander's possible intoxication did not violate Alexander's rights under the Fourth Amendment to the United States Constitution or Article 1, Section 11 of the Indiana Constitution. Accordingly, the trial court did not abuse its discretion when it admitted that evidence. We affirm the trial court.

[18]     Affirmed.

Najam, J., and Bailey, J., concur.